**Electronically Filed
Supreme Court
SCAP-21-0000291
02-DEC-2021
10:34 AM
Dkt. 11 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Plaintiff-Appellant,

vs.

ERIK WILLIS,
Defendant-Appellee.

SCAP-21-0000291

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-21-0000291; CASE NO. 1CPC-20-0000887)

DECEMBER 2, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY EDDINS, J.

Ordinarily police officers must get a warrant before entering a home without permission.  But when exigent circumstances arise, and the police have probable cause to arrest or search, our state and federal constitutions allow warrantless home entries.

The State invokes this "exigent circumstances" exception to justify a warrantless home entry into Erik Willis's residence. It advances an expansive view on what creates an "exigency": it argues a crime's random and violent nature alone can pose exigent circumstances validating a warrantless home intrusion.

We hold that the gravity of the crime, by itself, does not establish an exigency empowering law enforcement officers to bypass the warrant requirement. To support a warrantless home intrusion under the exigency exception, the State must articulate objective facts showing an immediate law enforcement need for the entry. Those facts must be independent of the underlying offense's grave nature. And they must be present when the police enter the home.

## I.

Honolulu Police Department officers entered Willis's home to arrest him. They did not have permission or a warrant. The police had probable cause to believe that three days earlier, Willis had repeatedly stabbed a teenager without provocation at a Kahala area beach. The evidence supporting probable cause included several security videos showing a person of interest. One HPD officer identified Willis as the person in the videos. This officer knew Willis and where he lived; the officer had previously interacted with him as a "mentor."

After surveilling Willis for a day and a half, the police made a warrantless entry into his home.  Inside the home, the police happened to see shoes and a shirt that matched the suspect's footwear and upper garment.  The police arrested Willis.  While detained at home, Willis asked the officers about getting his shirt from his family's washing machine.  About two hours later, still without a warrant, the police recovered the shoes and shirt.

A grand jury indicted Willis for attempted murder in the second degree.

Willis moved to suppress the shoes, the shirt, and the statements he made when he was arrested.

Circuit Court of the First Circuit Judge Kevin A. Souza granted the motion.  The court found that the police lacked exigent circumstances to enter Willis's residence without a warrant.  It reasoned that Willis had been under surveillance for a day and a half before his arrest.  The court underscored that there was "no evidence [that Willis] was armed, or that he was actively attempting to flee the jurisdiction."

Because the police unlawfully entered Willis's home, the court rejected the State's argument that the police validly seized the shoes and shirt under the plain view doctrine.  As fruits of the illegal entry, the court suppressed the shoes, shirt, and statements.

The State appealed.  We accepted its application for transfer.  The State does not contest the court's factual findings.  It also does not challenge the court's determination that no one consented to the home entry.  Instead, the State limits its appeal to the court's legal conclusions regarding the exigency exception, the plain view seizure, the fruit of the poisonous tree doctrine, and the resulting suppression of the evidence.

The State focuses on rebutting the court's finding of no exigency.  Willis's "random, unprovoked stabbing of a woman lying on the beach," the State argues, yielded an exigent circumstance that validated the home entry.  The State highlights the "stranger-danger" nature of the attack.  It credits an HPD detective's testimony that Willis presented "a different risk" because he had randomly and violently attacked a person without apparent motive.  Because the police feared Willis "might attack again randomly," the State claims, they couldn't devote the six or more hours they said they needed to write an affidavit and then get a warrant.

The State also alludes to three facts related to Willis's purported danger.  It mentions a "past instance[] of biting . . . a paramedic who was trying to help him."  It also says that some surveillance videos showed Willis "trespassing," "suspiciously looking into somebody else's garage," and "looking

around, prowling around."  The State further notes that the knife used in the attack was never recovered; so, it claims, the police had a reason to believe Willis was armed.

Willis defends the court's order granting his motion to suppress.  He argues the State cannot justify a warrantless home entry solely on the basis that a suspect "attacked and injured an unknown victim for unknown reasons."  Willis concedes that the police had probable cause to arrest him.

We agree with Willis and affirm the court's ruling.

**II.**

There's no place like home when it comes to the Fourth Amendment and article I, section 7 of the Hawai'i Constitution. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV (emphasis added).  This clause matches article I, section 7, except for our constitution's added protection against unreasonable "invasions of privacy."  Haw. Const. art. I, § 7.

"House" is the only location mentioned in both constitutional provisions.  In the context of searches and seizures, "the home is first among equals."  Florida v. Jardines, 569 U.S. 1, 6 (2013); see also Payton v. New York, 445 U.S. 573, 585 (1980) (observing that the "physical entry of the

5

home is the chief evil against which the wording of the Fourth Amendment is directed" (citation omitted)); Cf. State v. Line, 121 Hawai'i 74, 85, 214 P.3d 613, 624 (2009) (recognizing "the special privacy interest in the home").

If the government has probable cause, it can ordinarily arrest someone without a warrant in a *public* place for a felony or misdemeanor crime. See generally Atwater v. City of Lago Vista, 532 U.S. 318, 340, n.11, 354 (2001); United States v. Watson, 423 U.S. 411, 423-24 (1976).

But going into a person's *home* to make an arrest is different. Police officers must get a warrant before entering a dwelling unless an exception applies. Lange v. California, __ U.S. __, 141 S. Ct. 2011, 2017 (2021); Line, 121 Hawai'i at 86, 214 P.3d at 625. A warrantless entry into a home is "presumptively unreasonable." Payton, 445 U.S. at 586; State v. Pulse, 83 Hawai'i 229, 245, 925 P.2d 797, 813 (1996).

The only way to validate a warrantless and nonconsensual home entry is to show "exigent circumstances." See Line, 121 Hawai'i at 77, 85, 214 P.3d at 616, 624 (recognizing in a case where the police entered a home without consent or a warrant that "any warrantless entrance of a private dwelling by the police can only be justified under the exigent circumstances exceptions to the warrant requirement" (cleaned up)); State v. Lloyd, 61 Haw. 505, 510-11, 606 P.2d 913, 917 (1980) (per

curiam) (holding that "under both Federal and Hawaii Constitutions, law enforcement officers may not enter the home of a suspect to effect his arrest, without his consent or without prior judicial authorization, in the absence of exigent circumstances").

The police must have probable cause to arrest or search. See Pulse, 83 Hawai'i at 245, 925 P.2d at 813 (explaining that one "well-recognized and narrowly-defined exception to the warrant requirement occurs when the government has probable cause to search and exigent circumstances exist necessitating immediate police action" (emphasis added) (cleaned up)). But, "no amount of probable cause can justify a warrantless search or seizure absent exigent circumstances or some other recognized exception to the warrant requirement." State v. Bonnell, 75 Haw. 124, 137–38, 856 P.2d 1265, 1273 (1993) (cleaned up).

Immediacy shapes exigency. Exigent circumstances exist "when the demands of the occasion reasonably call for an immediate police response." State v. Jenkins, 93 Hawai'i 87, 102, 997 P.2d 13, 28 (2000) (citations omitted). The exigency exception thus permits law enforcement officers to respond to "now or never" situations with "no time to secure a warrant." Lange, __ U.S. at __, 141 S. Ct. at 2018 (citations omitted).

Exigent circumstances emerge "where there is an imminent threat of harm to a person, where there is a danger of serious

7

property damage, where a suspect is likely to escape, or where evidence is likely to be removed or destroyed." State v. Naeole, 148 Hawai'i 243, 250, 470 P.3d 1120, 1127 (2020).

An exigency is determined based on the totality of the circumstances. Lange, __ U.S. at __, 141 S. Ct. at 2018; Jenkins, 93 Hawai'i at 102, 997 P.2d at 28. It must have existed *at the time* of the warrantless search or seizure. See State v. Dorson, 62 Haw. 377, 385, 615 P.2d 740, 746 (1980) (explaining that "an exigency must be shown by the State to have existed at the time of the entry" (emphasis added)).

The State must prove exigency; it must identify "specific and articulable facts" showing why the police had to act without delay. Pulse, 83 Hawai'i at 245, 925 P.2d at 813 (citation omitted).

Here, the State insists that exigent circumstances existed because Willis posed an "imminent danger to the public." Willis's "random, unprovoked stabbing of a woman lying on the beach," the State argues, made him dangerous. The State says that given the "stranger-danger" nature of the crime, the police couldn't wait for a warrant. The State also mentions that: Willis had previously bit a paramedic who tried to help him; some surveillance videos showed Willis suspiciously looking around on the day of the stabbing; and the police hadn't recovered the knife used in the attack.

That's it.  The State does not point to any other facts demanding an immediate police intervention.  What it articulates does not validate the HPD officers' warrantless entry into Willis's home.

First, the State's reliance on the stabbing's violent and random nature fails.  The State does not identify any case that held the grave or violent nature of the underlying offense alone can justify a warrantless search or seizure within one's home. And we are unaware of any case supporting that proposition.

Rather, the gravity of the crime *standing alone* cannot establish exigent circumstances.  See, e.g., Welsh v. Wisconsin, 466 U.S. 740, 752 (1984) (recognizing that "courts have permitted warrantless home arrests for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the arrest" (emphasis added)); Mincey v. Arizona, 437 U.S. 385, 394 (1978) (declining "to hold that the seriousness of the offense under investigation itself creates exigent circumstances of the kind that under the Fourth Amendment justify a warrantless search").

This approach makes sense.  If the underlying offense's troubling nature alone can create exigent circumstances as the State suggests, all "stranger-danger" and violent assault cases would meet the exigency exception.  The expansive reach of the State's position dooms it.  Caniglia v. Strom, __ U.S. __, 141

9

S. Ct. 1596, 1600 (2021) (emphasizing that the Court "has repeatedly declined to expand the scope of exceptions to the warrant requirement to permit warrantless entry into the home" (cleaned up)).

We hold that the gravity of the underlying crime, by itself, cannot supply exigent circumstances validating warrantless home intrusions.

Second, beyond the stabbing's "stranger-danger" nature, the record doesn't show anything more about the threat Willis posed to the public at the time of his arrest. It in fact undercuts the State's claim that an *immediate* police action was necessary.

The police had been watching Willis for *a day and a half* before deciding to make a warrantless arrest. This surveillance seemingly did not reveal any information indicating that Willis would attack someone again. The officers knew Willis's identity and where he lived. They had no evidence that Willis was armed. They also didn't have any evidence that Willis was attempting to flee.

The State's secondary points – the past biting incident, the video footage of Willis "looking around," and the unrecovered knife used in the stabbing - do not show an immediate need to arrest Willis without a warrant either. The record also belies the State's reliance on these facts. One officer conceded that the crime's gravity was the sole reason

for the warrantless arrest.  The officer said the circumstances of the stabbing in and of themselves rendered Willis dangerous. He testified "[t]here [were] no additional facts" suggesting that Willis was "armed and dangerous."

The record only shows the officers' subjective inkling that Willis might randomly attack someone because he was accused of randomly attacking someone.  The officers' subjective reasoning alone cannot empower them to bypass the constitutional warrant requirement for home intrusions.  See State v. Dias, 62 Haw. 52, 56–57, 609 P.2d 637, 640 (1980) (explaining that "the justification for the warrantless entry must rest on more than [police officers'] subjective belief . . ."); see also McDonald v. United States, 335 U.S. 451, 460 (1948) (Jackson, J., concurring) ("When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequence if [the officer] postponed action to get a warrant." (Emphasis added)).

To support a warrantless home entry under the exigency exception, the State must point to specific and articulable facts objectively showing the immediate necessity of its action. Dias, 62 Haw. at 56-57, 609 P.2d at 640-41.  Those facts must be independent of the gravity of the underlying crime; and they must be present at the time of the entry.  Welsh, 466 U.S. at 752.  The State failed to meet its burden.

We conclude that the police did not face a now or never situation permitting them to enter Willis's home without a warrant.  The officers should have secured a warrant before intruding into his residence.  See Mitchell v. Wisconsin, __ U.S. __, 139 S. Ct. 2525, 2541 (2019) (Sotomayor, J. dissenting) ("If there is time, get a warrant.").

## III.

Inside Willis's home, the police saw the footwear and shirt that they believed the stabbing suspect wore.  This sighting might have been inadvertent.  But it didn't stem from a lawful police presence.  So the plain view doctrine does not validate the seizure of the shoes and shirt.  See State v. Meyer, 78 Hawai'i 308, 317, 893 P.2d 159, 168 (1995) (requiring "a lawful intrusion" for the State to successfully invoke the plain view doctrine).

The exclusionary rule then bars the use of the shoes and shirt (and any derivative evidence) at trial.  See State v. Weldon, 144 Hawai'i 522, 534, 445 P.3d 103, 115 (2019) (recognizing that courts "prohibit the use of evidence at trial that comes to light as a result of the exploitation of a previous illegal act of the police").  This rule also operates to exclude the statements Willis made while detained at home; those statements resulted from the unlawful home intrusion.

12

**IV.**

Because the police entered Willis's home without exigent circumstances, permission, or a warrant, the circuit court correctly suppressed the evidence and precluded its use at trial.  We affirm the court's findings of fact, conclusions of law and order granting Willis's motion to suppress.

Stephen K. Tsushima,
for appellant

Eric A. Seitz,
(Della A. Belatti, Jonathan
M.F. Loo, and Kevin Yolken,
with him on the briefs)
for appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

